UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGINA M. ALVAREZ,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No.<br><br>21-20205 (LDW)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

**<u>LEDA DUNN WETTRE, United States Magistrate Judge</u>**

This Federal Tort Claims Act ("FTCA") action comes before the Court by way of plaintiff Georgina M. Alvarez's First Amended Complaint (ECF 22) alleging a United States Postal Service ("USPS") truck negligently backed into her while she was a pedestrian in Jersey City, New Jersey. The Court conducted a non-jury trial over two trial days, June 20, 2024 (liability witnesses) and October 4, 2024 (damages witnesses).[1]  Closing arguments were held on December 18, 2024.

Based on the testimony and evidence presented at trial, the Court's observations of the manner and demeanor of the witnesses upon which it assessed their credibility, and having considered the parties' post-trial submissions (ECF 99, 100), this opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).  For the reasons set forth below, the Court finds that plaintiff has not established by a preponderance of the evidence that defendant was negligent.  The Court further finds that even if plaintiff had established

---

[1] The trial transcript, which is consecutively numbered through both days of testimony, shall be cited as "Tr."  The transcript of June 20, 2024 runs from pages 1 through 231 (ECF 88).  The transcript of October 4, 2024 runs from pages 232 through 419 (ECF 96).  Contents of the Final Pretrial Order (ECF 68) shall be cited as "FPTO at [page number]."  The video recording of the incident in question, Exhibit D-2, shall be referred to and cited as "Video," and the time the cited evidence appears on the Video shall also be cited where pertinent.

that defendant had been negligent, plaintiff's own negligence would have exceeded fifty-one percent of the total alleged negligence, constituting a further bar to her recovery. The Court therefore does not reach the issue of damages. Pursuant to Federal Rule of Civil Procedure 58(b)(1), Judgment for defendant shall be entered separately.

## I.  FINDINGS OF FACT

1. Plaintiff Georgina Alvarez alleges in this action that while she was a pedestrian in Jersey City, New Jersey on June 20, 2020, she was struck by a USPS truck at the four-way intersection of Ocean and Neptune Avenues. (ECF 22, First Am. Complt. ¶¶ 8, 12; FPTO at 2; Tr. at 28:2-12).

2. At the time of the incident, plaintiff was 37 years old and resided at 202 Ocean Avenue, Jersey City with her family. (FPTO at 3, 4; Tr. at 25:12-16; 29:3-11; 58:7-17). She has been unemployed since 2003. (Tr. at 60:20-22).

3. Plaintiff set off on foot from her residence on Saturday, June 20, 2020, just after 10:00 a.m. and proceeded along Ocean Avenue to visit a friend's residence. (Tr. at 29:12-16; 29:25 to 30:5; 31:18-22; 202:18-22).

4. En route, plaintiff reached the four-way intersection of Ocean and Neptune Avenues. (FPTO at 2). There is a traffic light at the intersection. (FPTO at 2; Tr. at 31:23-25).

5. Plaintiff intended to cross Ocean Avenue at its intersection with Neptune in order to reach her friend's residence. (Tr. at 31:18-22).

6. The Court takes judicial notice that at that intersection, Ocean Avenue is a two-way street running north and south, with one lane of traffic running in each direction. (*See* Video).

7. Plaintiff testified that as she approached the intersection, she noticed a large USPS truck parked along the curb on Ocean Avenue to her right, about four to five feet from the intersection. (Tr.

at 33:8-25; 36:20-24). The truck was at the northeast corner of Ocean and Neptune Avenues. (FPTO at 2). Plaintiff testified she noticed the USPS driver was in the vehicle and the engine was running. (Tr. at 34:3-16; 35:17-36:11).

8. Meanwhile, at the same time, USPS employee Anastasia Ortiz, the driver of the truck, was preparing to pull the truck away from the curb along Ocean Avenue where it was parked and proceed onto Ocean Avenue to complete her parcel deliveries. (Tr. at 174:18-22; 210:18-23).

9. Ortiz needed to back the truck up before proceeding into the roadway on Ocean Avenue, as there was a car directly in front of her truck that did not leave her sufficient room to exit her parking space without backing up. (Tr. at 179:19-25).

10. The USPS truck Ortiz was driving is known as a "two-ton" truck, which is equipped with left and right side mirrors and a rear view camera. (Tr. at 155:17-19; 160:23 to 161:7). The rear view camera has visibility of the area behind the truck such that a pedestrian behind the bumper would be visible. (Tr. at 162:18 to 164:8; 209:24 to 210:16; 223:6-17). The views from the left and right side mirrors, together with the rear view camera, provide visibility around the entire side and rear portions of the vehicle. (Tr. at 161:11 to 162:6; 162:18 to 164:8).

11. The rear side of the two-ton USPS truck is flat from the top of the truck to the bottom, with the exception of a platform that appears to extend out about six inches from the rear of the vehicle, approximately one and a half to two feet above the ground. (Exh. D-4). The platform appears designed for a delivery driver to stand on when entering the rear opening of the truck to load or retrieve packages. (*See id*).

12. Ortiz testified credibly that she checked her side mirrors and her rear view camera at least twice each before determining it was safe to back up because there was no one behind her. (Tr. at 174:19 to 176:5; *see also* FPTO at 2-3).

13. Ortiz is an experienced driver, having driven the same type of USPS truck for approximately four to five years prior to the incident, including in downtown Manhattan, New York City. (Tr. at 157:11 to 158:5, 159:7-21).

14. A Video of approximately 48 seconds in length continuously records the moments before, during and after plaintiff's alleged contact with the postal truck.[2] (Exh. D-2; FPTO at 4). The Video was taken from a local store's security cameras, and its authenticity was stipulated by the parties. (FPTO at 4). The angle of the Video captures plaintiff's movement from the curb at the northeast corner of Ocean and Neptune Avenues, as well as the truck's movement viewed from the passenger side of the vehicle. There is not, however, a view of the USPS truck from the rear that captures plaintiff's alleged contact with the truck.

15. The Video depicts plaintiff on a dry, sunny day, striding directly and without hesitation off of the sidewalk and onto Ocean Avenue with the apparent intent to cross Ocean Avenue. This depiction contradicts plaintiff's testimony that she stopped on the sidewalk when she reached the intersection of Ocean and Neptune Avenues before stepping off the curb. (*Compare* Tr. at 37:2-9 *with* Video :01 to :03).

16. At the northeast corner at which plaintiff entered Ocean Avenue, there is not a marked crosswalk. (*See* Video). This is also apparent from Google Maps photos of the intersection,

---

[2] The Court rejects as not credible plaintiff's assertion that the Video is incomplete. When asked to explain what she believed was "missing" from the recording, plaintiff said that she thought portions of the recording might have been spliced out. (*See* Tr. at 108:11 to 109:4). But the movement of all people and objects in the Video, including cars, is continuous and natural, refuting any inference that portions of the seemingly continuous 48-second recording were spliced out. In any event, the majority of plaintiff's criticism of the Video is based on her opinion that the camera is not at an advantageous angle to capture the rear side of the USPS truck. (Tr. at 106:17 to 107:7; 107:18 to 108:6). This goes to the weight to be placed on the Video as to findings of what occurred at the rear side of the vehicle with regard to plaintiff. The Court has taken the angle of the Video into consideration in rendering these Findings of Fact and Conclusions of Law.

of which the Court takes judicial notice. Jersey City Police Officer Vanessa Cabrera, whose patrol area encompasses that intersection, testified at trial that the corner at which plaintiff entered the street is not a crosswalk. (Tr. at 119:18 to 120:22). The marked crosswalk at the four way intersection of Ocean and Neptune is at the southeast corner, and Police Officer Cabrera referred to it as the "only" crosswalk at the intersection of Neptune and Ocean Avenues. (Tr. at 120:14-22).

17. As plaintiff stepped off the curb and onto Ocean Avenue, she can be seen on the Video with her head turned to her left, in order to monitor the oncoming traffic she would have to navigate in crossing Ocean Avenue to reach her friend's residence. (Video at :02 to :03).

18. The light on Ocean Avenue was green, as traffic is seen proceeding in both directions on the Video as plaintiff steps into the intersection. (Video at :00 to :03).

19. Plaintiff admits that as she entered the intersection, the light was red in her direction as a pedestrian, she was walking toward oncoming traffic, and she was looking to her left at the oncoming traffic when she entered the intersection. (Tr. at 37:13 to 39:12; 68:20-23; 71:9-14; 71:20 to 72:8; 72:20-21; FPTO at 2).

20. Plaintiff testified that while she knew she did not have the right of way, she stepped into the intersection anyway because the light was "about to" turn green in her direction. (Tr. at 38:5-11; 71:12-15; 72:4-5). This does not comport with the Video, which shows traffic proceeding along Ocean Avenue for more than 30 seconds after plaintiff enters the intersection. (Video at :00 to :35).

21. When plaintiff stepped off the curb onto Ocean Avenue, she walked only four feet behind the running USPS truck. (Video at :02 to :03).

22. Nearly at the exact moment when plaintiff's foot hit the pavement on Ocean Avenue after stepping off the curb, the postal truck began to move slowly in reverse. (Video at :02 to :03). The truck was parked approximately five feet from the intersection when it began to move. (*See* Video at :02; *see also* Tr. at 207:25 to 208:2).

23. Almost four seconds after plaintiff walked behind the reversing truck, plaintiff can be seen in the Video appearing to stumble backwards. (Video :06 to :07). The viewer cannot tell from the Video whether plaintiff came into contact with the postal truck or was startled by its proximity and moved quickly away from it.

24. The truck was moving so slowly in reverse that there would have been sufficient time for plaintiff to move out of the way of the truck if she had noticed it before coming into contact with it. (*See* Video at :03 to :07).

25. Plaintiff testified that when she took two steps into the intersection, she heard a loud noise like the screeching of brakes and "got pushed to the side." (Tr. at 39:13 to 41:16). She acknowledges she did not fall down. (Tr. at 73:19-20; FPTO at 3).

26. Ortiz testified she did not feel any impact that would have indicated she had hit something. (Tr. at 225:8-10; FPTO at 3).

27. Ortiz did not notice plaintiff until after the alleged impact. (Tr. at 178:2-10). She first noticed plaintiff when plaintiff was "past the truck" and further into the intersection on Ocean Avenue than the truck. (Tr. at 176:6 to 177:9).

28. There is no credible evidence that Ortiz saw plaintiff while the truck was moving in reverse.

29. After the alleged impact, plaintiff moved quickly from the street and back onto the sidewalk as Ortiz's truck began to pull away. (Video at :18 to :26). Plaintiff was hurrying to record the

USPS truck with her mobile phone as it moved away. (Video at :18 to :26; Tr. at 75:19 to 76:2; 104:11-25).

30. From the Video, plaintiff appears completely uninjured after the alleged impact. She is moving quickly with no difference in gait from the portions of the Video recorded prior to the alleged impact. (Video at :18 to :26). She is not attending to her knee in any respect. (Video at :18 to :40; Tr. at 74:20-22). There is nothing about her movements in the Video to indicate she had been struck or injured. (Video at :18 to :40).

31. Plaintiff's claim that she developed a "grapefruit-sized" red indentation near her right knee from impact with the truck's bumper is not sufficiently corroborated to be credible.

32. When plaintiff reported the incident to Jersey City Police Officer Vanessa Cabrera just minutes later while Cabrera was patrolling the area, Cabrera saw no signs of blood, limping or other traumatic injury to plaintiff. (Tr. at 124:21-23, 124:24 to 125:11, 217:10-14; FPTO at 3). Cabrera stated that she observed plaintiff walking normally. (Tr. at 124:16-17). She noticed only "slight redness" around plaintiff's right knee. (Tr. at 118:11 to 118:25; 149:22 to 150:15). There was no swelling to the knee, nor any marks indicating that the redness was necessarily caused by impact with the USPS truck. (Tr. at 149:25 to 150:15).

33. Ortiz was called back to the nearby USPS office by her manager as a result of plaintiff's report to the police. (Tr. at 179:11-17; 180:11-25). Ortiz saw plaintiff at the office and noticed only what she described as a "red mark" the size of a mosquito bite on plaintiff's right leg. (Tr. at 184:1-6; 219:13-21).

34. At trial, plaintiff proffered no photographs of her knee from the period immediately after the impact to support her claims of a large indentation, although she acknowledged having her phone (with a camera) on her person at the time of the incident. (Tr. at 104:11-25).

7

35. Further, plaintiff declined Cabrera's offer to call an ambulance, and Cabrera saw no medical need for an ambulance that would have caused her, of her own accord, to call for medical attention. (Tr. at 126:16 to 127:14; FPTO at 3).

36. Plaintiff walked the two blocks home from the post office on her own power. (Tr. at 81:9-11; FPTO at 3).

37. Plaintiff did not seek medical attention of any kind for more than three weeks after the alleged incident. (FPTO at 4; Tr. at 82:10-14).

38. Plaintiff subsequently treated with medical providers for alleged injuries to her knee and back. (FPTO at 4).

## II.    CONCLUSIONS OF LAW

A. Claims and Defenses

39. Plaintiff proceeded to trial on a single negligence count against defendant under the FTCA. (FPTO at 1; ECF 22 (First Am. Complt.)).

40. Defendant pleaded and presented evidence at trial concerning its affirmative defenses that plaintiff was comparatively negligent. (ECF 23 at 6-7, Fifth, Sixth and Seventh Separate Defenses).

B. Jurisdiction and Venue

41. The Court has jurisdiction over the subject matter of this action pursuant to the FTCA, 28 U.S.C. §§ 1346(b)(1) and 2671, which confers exclusive jurisdiction over negligence claims against the United States for money damages arising out of the actions of its employees acting within the scope of their duties.[3]

---

[3] The parties agree that USPS employee Anastasia Ortiz was acting within the scope of her duties at all times relevant to plaintiff's claim.

8

42. Venue is proper in this District pursuant to 28 U.S.C. § 1402(b) as a jurisdiction in which the plaintiff resides. Plaintiff represented that she resided in New Jersey at the time of the filing of the Complaint and trial. (ECF 1 at p.1 ¶1; FPTO at 4).

C. <u>Legal Standards</u>

43. To prevail in this action, plaintiff must establish defendant's liability under the FTCA. A plaintiff may recover under the FTCA only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). As it is undisputed that the incident at issue occurred in New Jersey, the State's negligence law applies. *See Undercuffler v. United States*, No. 09-CV-1152 (JBS) (AMD), 2011 WL 11051509, at *9 (D.N.J. Feb. 17, 2011).

    (i)    *Negligence Under New Jersey Law*

44. To recover for negligence under New Jersey law, a plaintiff must demonstrate by a preponderance of the evidence the following elements: (1) a duty of care; (2) breach of that duty; (3) proximate cause; and (4) damages. *See Brown v. United States*, Civ. No. 08-3382 (GEB), 2010 WL 2652416, at *3 (D.N.J. June 25, 2010); *Roberts v. Biancamano*, No. 09-CV-6212 (WJM) (MF), 2013 WL 775708, at *1 (D.N.J. Feb. 27, 2013); *Fernandes v. DAR Development Corp.,* 222 N.J. 390, 403-04 (2015).

45. To establish the element of breach of a duty of care, a plaintiff must show that the defendant failed to "use that degree of care, precaution and vigilance which a reasonably prudent person would use under the same or similar circumstances." *Hawkins v. United States*, No. 03-CV-3979 (JAG), 2006 WL 436124 at *3 (D.N.J. Feb. 21, 2006).

46. Violation of a duty of care imposed by statute may be considered by the factfinder in determining negligence; however, it does not normally constitute negligence *per se*. *See Labega v. Joshi*, 470 N.J. Super. 472, 490 (App. Div. 2022).

47. In order to establish the element of proximate cause, "[t]he plaintiff must introduce evidence which provides a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of the defendant was a cause in fact of the injury." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 74 (3d Cir. 1996).

    (ii)    *Comparative Negligence Under New Jersey Law*

48. For a defendant to establish its affirmative defenses of plaintiff's comparative negligence, it is required to present such evidence at trial. *Fernandes*, 222 N.J. at 408-09.

49. A plaintiff is comparatively negligent when she "was moving about in the world in a way that posed an unreasonable risk of physical injury to herself." *Tose v. Greate Bay Hotel & Casino Inc.*, 819 F. Supp. 1312, 1315 (D.N.J. 1993).

50. Under New Jersey's Comparative Negligence Law, a plaintiff's degree of contributory negligence may reduce or bar a plaintiff's recovery. The statute provides in relevant part as follows:

    > Contributory negligence shall not bar recovery in an action by any person . . . to recover damages for negligence resulting in . . . injury to person , , , if such negligence was not greater than the negligence of the person against whom recovery is sought . . . Any damages sustained shall be diminished by the percentage of negligence attributable to the person recovering.

    N.J.S.A. 2A:15-5.1.

51. Pursuant to the statute, a plaintiff who is found to be fifty percent or less at fault may recover in a negligence action; however, any award will be reduced by the percentage of fault assigned

to the plaintiff. *See* N.J.S.A. 2A:15-5.1; *Brodsky v. Grinnell Haulers, Inc.*, 181 N.J. 102, 109 (2004).

52. "[A] plaintiff who is found to be more than fifty percent at fault is entitled to no recovery." *Brodsky*, 181 N.J. at 109; *accord Roberts*, 2013 WL 775708, at *2; *New Gold Equities Corp. v. Jaffe Spindler Co.*, 453 N.J. Super. 358, 380 (App. Div. 2018).

D. Analysis

    (i) *Assessment of Whether Defendant Was Negligent*

53. The Court first examines whether plaintiff has demonstrated negligence on the part of the defendant. It finds that plaintiff has **not** established all elements of her negligence claim against defendant by a preponderance of the evidence.

54. First, the Court determines whether defendant owed a duty of care in the circumstances of this case. It concludes that the defendant, through its agent Ortiz, owed two duties of care: (1) to exercise due care toward pedestrians in operating the USPS truck, *see Brown*, 2010 WL 2652416, at *3; *Bracken v. Bruce*, 190 N.J. Super. 146, 150 (App. Div. 1983); and (2) a statutory duty not to park closer than 25 feet from the intersection of Ocean and Neptune Avenues. N.J.S.A. 39:4-138 (drivers in New Jersey are not permitted to park "[w]ithin 25 feet of the nearest crosswalk or side line of a street or intersecting highway"); *see also* Tr. at 148:13-18 (testimony of Officer Cabrera that vehicles in Jersey City are not permitted to park within four or five feet of an intersection). Plaintiff has established this element.

55. Second, the Court examines whether defendant violated either of these two duties of care. With regard to the duty of care in operating the USPS truck, the Court finds that defendant breached its duty. While Ortiz did exercise due care in examining her mirrors and rear view camera before beginning to proceed in reverse, the Video shows a three to four-second interval during

which she continued to move in reverse despite a pedestrian, plaintiff, being behind her vehicle. Because the evidence at trial established that a pedestrian in that location would have been visible from the USPS truck's rear view camera, the Court concludes that Ortiz was not watching behind the vehicle the entire time the truck was moving in reverse, which violated her duty of care in safely operating the truck vis à vis pedestrians.

56. The Court also finds that Ortiz violated the statutory duty of care under N.J.S.A. 39:4-138 in that she was parked much closer to the intersection of Neptune and Ocean Avenues than the 25 feet prescribed by law. Ortiz admitted this at trial, and the Video plainly shows it. (Tr. at 207:25 to 208:2). Plaintiff has therefore demonstrated the second element of negligence by a preponderance of the evidence.

57. Third, the Court considers the element of proximate causation, *i.e.*, whether defendant's breach of duty proximately caused the harm claimed. Even a statutory violation "to be evidential, must be causally related to the happening of the accident." *Labega*, 470 N.J. Super. at 490 (internal quotations omitted). The Court finds that plaintiff has *not* established the element of proximate cause by a preponderance of the evidence for the following reasons.

58. The sole proximate cause of the injuries claimed by plaintiff is having been struck by the USPS truck. (First Am. Complaint ¶ 12; Tr. at 261, 289, 302, 334). But the Court does not find that plaintiff has demonstrated by a preponderance of the evidence that she was in fact struck by the USPS truck.

59. Plaintiff's testimony is the primary evidence that she was struck by the USPS truck. However, plaintiff's own account on this point was oddly equivocal as to whether she was in fact struck by the vehicle. When asked to describe the incident in her own words at trial, plaintiff testified

merely to having been "pushed to the side" while in the intersection, until prompted by questioning to say she was struck by the truck. (Tr. at 40:3-5; 40:22 to 41:2; 41:3-22).

60. Plaintiff's testimony on this point was not credible, and the Court did not find her to be a credible witness in general. Plaintiff was prone to exaggeration throughout her testimony, and portions of her account of the incident are directly contradicted by the contemporaneous Video. For instance, to justify her entering the intersection while the light in her direction was red, plaintiff repeatedly testified that the light was "about to turn green"; the Video shows that the light did not turn green for at least thirty seconds after she entered the intersection. Plaintiff also said she paused on the sidewalk before entering the intersection against the light, but the Video shows her striding directly off the sidewalk without hesitation.

61. Plaintiff was also a combative witness, who insisted on the most favorable version of events to her case throughout her testimony, even in the face of contrary evidence. Throughout her testimony, she did not concede certain facts even when it was obvious she should have been constrained to accept them as true. The Court was left with the impression of a witness whose testimony was driven more by a desire to prevail in the action than to abide by her duty as a witness to testify truthfully. For all of these reasons, the Court places little weight on plaintiff's testimony that she was struck by the USPS truck.

62. Further, there is insufficient corroborating evidence that plaintiff was in fact struck by the USPS truck. The Video demonstrates that if plaintiff had noticed the truck before it reached her, she could easily have moved out of the way before the truck contacted her given how slowly it was moving.

63. The Video further shows plaintiff stumbling backward, perhaps because of contact with the portion of the vehicle that juts out six inches from the back of the vehicle, or perhaps because

she suddenly noticed the proximity of the truck and moved aside quicky. The Video and other proofs simply do not provide sufficient evidence that the USPS truck hit plaintiff, and the Court accordingly does not find that it "was more likely than not" that it did.

64. There also was substantial evidence presented at trial that undermines plaintiff's claim to have been struck by the postal truck. Plaintiff remained on her feet after she was allegedly struck -- which plaintiff admits and the Video shows, which is inconsistent with having been hit by the "two-ton" truck. The lack of any signs of injury to plaintiff observed by the sole neutral witness, Officer Cabrera, is also inconsistent with plaintiff's having been struck. Plaintiff's rapid and unimpaired movements, with no sign of injury, on the Video immediately after the alleged strike is also inconsistent with plaintiff's claim to have been struck. The same is true of plaintiff's not having taken photos of her knee immediately after the alleged incident to present at trial, despite her having pulled out her phone to photograph the truck immediately after the incident. One would expect plaintiff to have used her phone's camera to memorialize her alleged injury with a photograph if there were telltale signs of having been hit by the truck, such as the "grapefruit sized" mark she described at trial. Further, plaintiff's not having sought medical attention of any kind for more than three weeks after the incident also militates against a conclusion that she was struck.

65. The primary affirmative evidence of plaintiff's having been struck by the vehicle is her own testimony. But observing the plaintiff's demeanor as she testified, and considering the number of points on which plaintiff's testimony was unreliable or simply not credible, the Court does not find plaintiff's testimony or the other evidence at trial proves by a preponderance of the evidence that the USPS vehicle struck her.

66. Having found that plaintiff failed to establish the element of proximate cause by a preponderance of the evidence, the Court does not reach the issue of whether plaintiff has proven damages. Plaintiff has failed to establish negligence.

    (ii)   *Assessment of Plaintiff's Contributory Negligence*

67. Even assuming that the Court had found that plaintiff satisfied all elements of defendant's negligence by a preponderance of the evidence, it would nevertheless find defendant was not liable because plaintiff's own negligence exceeds that of defendant, barring recovery under N.J.S.A. 2A:15-5.1.

68. Plaintiff owed at least two duties of care in her conduct on June 20, 2020. First, a pedestrian is required to exercise due care for their own safety. *See Brown*, 2010 WL 2652416, at *3. Second, plaintiff owed a statutory duty of care as a pedestrian crossing against a red light at the intersection in question: "On highways[4] where traffic is controlled by a traffic control signal . . .[p]edestrians shall not cross a roadway against the 'stop' or red signal at a crosswalk, whether marked or unmarked, unless otherwise specifically directed to go by a traffic or police officer, or official traffic control device." N.J.S.A. 39:4-32(a).

69. Plaintiff breached her common law and statutory duties of care as a pedestrian in multiple respects. First, she breached these duties by entering the intersection and endeavoring to cross Ocean Avenue while the light was red in her direction. Second, she strode into a busy intersection while looking left at oncoming traffic and ignoring the running USPS truck she observed to her right, which she walked closely behind. She was not observing her surroundings because she was focused on jaywalking across a busy intersection against the

---

[4]   "'Highway' means the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." N.J.S.A. 39:1-1.

light. If she had been observing her surroundings, plaintiff could easily have moved out of the way of the slowly reversing truck. In all these respects, plaintiff failed to exercise due care for her own safety.

70. In comparing the alleged negligence of the USPS driver to that of plaintiff, the Court finds that plaintiff's failure to exercise due care for her own safety was the overwhelming cause of any contact that may have occurred with the USPS vehicle (which, as set forth above, the Court concludes she failed to establish by a preponderance of the evidence). Although Ortiz was parked closer to the intersection than the law permits, plaintiff was well aware that she was walking closely behind a running truck.

71. Further, Ortiz fairly would not have expected to encounter a pedestrian in an unmarked crosswalk behind the truck while the light was red in the pedestrian's direction. "The duty of a driver to exercise due care does not require him to anticipate that persons not in his path of travel will suddenly place themselves there." *Roberts*, 2013 WL 775708, at *6.

72. Ortiz also checked her mirrors and rear view camera thoroughly before she reversed the truck. Although plaintiff would have been visible in the rear view camera for three to four seconds before the truck stopped, this was a very short period of time for the truck driver to be expected to stop, especially when she would have had no reason to expect to encounter any pedestrians in the intersection. *See id.*

73. If indeed plaintiff had demonstrated by a preponderance of the evidence that she had been struck by the USPS truck, then her own negligence as the party in the best position to have prevented that contact exceeded defendant's negligence. Plaintiff's conduct constituted more than fifty percent of the alleged negligence, barring her recovery under New Jersey's Comparative Negligence Act.

### III. CONCLUSION

For the foregoing reasons, plaintiff is not entitled to prevail on her negligence claim under the FTCA. Judgment will be entered separately for defendant, and this case shall be marked closed.

Dated: February 26, 2025

                                               *s/ Leda Dunn Wettre*
                                               Leda Dunn Wettre
                                               United States Magistrate Judge